UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JEAN M. MORRILL,                            )
                                            )
    Plaintiff                              )
                                            )
v.                                          )        1:10-cv-00269-JAW
                                            )
SOCIAL SECURITY ADMINISTRATION              )
COMMISSIONER,                               )
                                            )
    Defendant                              )

## REPORT AND RECOMMENDED DECISION

The Social Security Administration found that Jean M. Morrill has severe impairments consisting of mild anxiety, mild depression, learning disorder, history of alcohol abuse, and obesity, but retains the functional capacity to perform substantial gainful activity in occupations existing in significant numbers in the national economy, resulting in a denial of Morrill's application for supplemental security income benefits under Title XVI of the Social Security Act. Morrill commenced this civil action to obtain judicial review of the final administrative decision, alleging errors associated with the Judge's residual functional capacity analysis. I recommend that the Court affirm the administrative decision.

## Standard of Review

The standard of review is whether substantial evidence supports the Commissioner's findings. 42 U.S.C. §§ 405(g), 1383(c)(3); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not

conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

**The Administrative Findings**

The Commissioner's final decision is the February 18, 2010, decision of Administrative Law Judge Katherine Morgan because the Decision Review Board did not complete its review during the time allowed. Judge Morgan's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims. (R. 4, 10-18.[1])

At step 1 of the sequential evaluation process, the Judge found that Morrill has not engaged in substantial gainful activity since November 1, 2006, the date of application. (Finding 1, R. 12.)

At step 2, the Judge found that Morrill has the following severe impairments: mild anxiety, mild depression, learning disorder, history of alcohol abuse, and obesity. (Finding 2, R. 12.) As for obesity, the Judge wrote that she "deemed" the condition to be severe because Morrill's body mass index is between 37.9 and 42.4. However, the Judge also found that complaints of knee and back pain did not describe a "medically determinable" impairment given the lack of "objective medical evidence" in the form of radiological findings. (R. 13.) As for limited evidence of pain upon palpation at L4-L5 and an observation that Morrill is "quite deconditioned," the Judge indicated that these comments were not "objective evidence beyond the claimant's subjective assertions." (R. 13.)

At step 3, the Judge found that this combination of impairments would not meet or equal any listing in the Commissioner's Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P. (Finding 3, R. 14.) The Judge performed the step-3 praxis of evaluating the three categories of mental functioning, assessing only mild limitation in activities of daily living, mild

---

[1] The record in this case is filed as a bound paper volume.

difficulties in maintaining social functioning, and mild difficulties with concentration, persistence, and pace. (R. 14.) This, seemingly, conflicted with the Judge's step 2 assessment that mental health impairments were severe, notwithstanding the description of them as "mild anxiety" and "mild depression."

As for residual functional capacity (RFC), the Judge found that Morrill's combined impairments do not result in an exertional limitation but do result in a nonexertional mental limitation that restricts Morrill to simple jobs involving simple instructions and only occasional changes in the work setting. (Finding 4, R. 15.) The Judge recognized that Morrill had a history of mental health issues dating to childhood, but concluded that Morrill's perception that she can endure these issues without treatment other than family support, plus her ability to successfully live alone with a young child, pay rent, and maintain a functional household and social circle, reflect an individual with a capacity for simple work. This assessment, in the Judge's view, is substantiated by the testimony of James Claiborne, a testifying medical expert, and the assessments made by Dr. Donna Gates, Dr. David Axelman, Dr. David Houston, Dr. Lawrence Johnson, and various treatment records. The Judge rejected the contrary viewpoint of treatment provider Dr. Michael MacDonald. (R. 16-17.)

The Judge found that there is no past relevant work to consider at step 4. (Finding 5, R. 17.)

Morrill was born in 1985, has a limited education (ninth grade), can communicate in English, and lacks transferable skills. (Findings 6-8, R. 17.) Considering these vocational factors in conjunction with the residual functional capacity finding, the Judge found, at step 5, that Morrill is able to engage in substantial gainful employment based on an application of the framework of the Commissioner's Medical-Vocational Guidelines, Appendix 2 to 20 C.F.R. Part

3

404, Subpart P. (Finding 9, R. 17-18.)  Given her age, the Guidelines would indicate a finding of not disabled even for a claimant limited to sedentary work, unless additional physical limitations or non-exertional limitations indicated otherwise.  Guidelines §§ 201.00(h)(1), 201.24.

## Plaintiff's Statement of Errors and Oral Argument

Morrill argues that the Judge erred in regard to the residual functional capacity finding by failing to account for obesity, failing to find meaningful restrictions associated with mental health conditions, and failing to give controlling weight to the opinions of a treatment provider. (Statement of Errors, Doc. No. 14.)  At oral argument, claimant's counsel highlighted the atypical approach the Judge took to her step 2 and step 4 findings, insofar as the Judge identified mental health conditions as "mild" in all functional categories but "severe" for vocational purposes.  Counsel also noted that the Judge found obesity to be a severe impairment, yet never explained what limitation it imposed on Morrill's functional capacity.

At oral argument, commissioner's counsel emphasized that mild mental impairments can still be regarded as severe, so long as they are found to impose more than minimal limitation, citing 20 C.F.R. § 416.920a(d)(1).  Otherwise, the point was made that there is no harm in assigning a residual functional capacity limitation even if impairment is only mild.  As for obesity, the Commissioner conceded that the Judge failed to discuss it, but argued that it is immaterial insofar as the consulting experts of record considered it and found it non-severe and even the treating physician made no reference to obesity in his residual functional capacity assessments.

## The Evidence

Morrill complains, primarily, of limitations arising from anxiety and depression.  She also describes intermittent lower-back pain that she has allegedly endured since childhood.

4

(Claimant's Function Report, Ex. 4E, R. 94-101.) There is no radiological evidence of a back condition. Nor is there medical evidence of any treatment for back pain other than her independent use of over-the-counter pain medication. Morrill's primary care physician, Dr. Michael MacDonald, M.D., Ph.D., has nevertheless opined that Morrill is subject to exertional limitations, including a limitation to light work, a 2-hour restriction on the amount of time she can either sit or stand over the course of a work day, and a limitation calling for freedom to change position roughly every half-hour. (Ex. 19F, R. 390-93.) As for mental impairment, there is evidence of depression and anxiety, stemming from childhood trauma and abuse from men other than family members. Morrill's primary complaint is of social anxiety and lack of esteem. Learning disabilities contribute to the picture.

*Physical Impairment*

Maine Disability Determination Services referred Morrill's treatment records to consulting physicians for review and assessment. It has also referred Morrill for examination. Dr. David Axelman, M.D., examined Morrill in October of 2007. Dr. Axelman's physical examination of the back was limited to noting some pain on palpation at approximately L4-L5. (Ex. 8F, R. 198.) He assessed back pain that was "mechanical in nature" and noted that Morrill is "quite deconditioned." (R. 199.) Nevertheless, based on his complete examination, he opined that Morrill's "ability to do work-related activities does not appear to be limited objectively in any major way with sitting, standing, walking." (Id.) Dr. Axelman's physical examination report is the only record that Morrill has identified that actually assesses her range of motion, flexion, bilateral strength, gait, walk, and so forth. Morrill has not identified any other work up or physical examination report from Dr. MacDonald, other than his ultimate source statement about her ability to perform work-related activities. Treatment records from Sebasticook Family

Doctors, Dr. MacDonald's practice group, indicate, under "review of systems," musculoskeletal, both "positive" for back pain and bone/joint symptoms, and also "negative" for the same conditions. (Ex. 17F, R. 372, 375, 384.) Notes from some providers in this practice fail to indicate the existence of a musculoskeletal review, despite reviewing other systems. (R. 378-79, 380-81.)

Consulting physician Dr. Johnson provided DDS with a physical RFC assessment in November of 2007. Dr. Johnson found no evidence of any physical problems and took Morrill's height and weight into consideration. (Ex. 10F, R. 220, 222.)

*Mental Impairment*

Morrill's mental health treatment has predominantly consisted of medication. She received some limited counseling in January and February of 2006 from Takeo Kawamura MD and Associates (prior to the alleged disability onset date) and received a diagnosis of chronic depression and anxiety with acute exacerbations of symptoms. (Ex. 1F, R. 138.) Otherwise, Morrill has received medication management treatment from Sebasticook Family Doctors. (Ex. 3F, 17F.) Dr. MacDonald opines that Morrill is unable to perform or seriously limited when it comes to multiple mental tasks associated with unskilled work. His assessment is that Morrill would prove satisfactory in only four areas of functioning and would not perform well in any. (Ex. 18F.)

DDS referred Morrill for a psychological review by Dr. Donna Gates, Ph.D., on August 30, 2007. (Ex. 7F.) Dr. Gates interviewed Morrill, reviewed Morrill's treatment records and history, and conducted a mental status examination. Dr. Gates noted the absence of any current counseling services. (R. 193.) She also found that Morrill presented "with no clinically significant mental health disorders." (R. 194.) She assessed that Morrill appeared capable of

6

following work rules and relating adequately [to] coworkers, supervisors and the public." Dr. Gates felt judgment was adequate for jobs within Morrill's vocational ability and that she could likely manage mild work-related stress, function independently on simple jobs, maintain appearance and behavior, and be a reliable worker. (R. 194-95.) Dr. Gates noted that Morrill does have "some social anxiety features and issues with self-consciousness," but did not regard these subjective concerns as warranting a clinical diagnosis. (R. 195.) She noted a general assessment of functioning score of 70. (Id.)

Dr. David Houston performed a psychiatric review technique for DDS on October 17, 2007. He reviewed the reports of Dr. Kawamura and that of Dr. Gates and identified the relevant mental health categories as affective disorders (depression NOS) and anxiety-related disorders (anxiety NOS). Dr. Houston found that these impairments were not severe for social security purposes. In fact, he discerned no degree of limitation in any of the three areas of functioning. (Ex. 9F, R. 201, 211, 213.)

Morrill later introduced a childhood psychological evaluation in 1999, special education records spanning 1995 through 2001, and psychotherapy progress notes from 2002 and 2003. (Exs. 12F, 13F, 14F.)

The Judge called Dr. Ira Hymoff as a medical expert at the hearing, who questioned Morrill to a limited extent and responded to questions from both the Judge and counsel. Dr. Hymoff asked Morrill why she had never sought additional mental health services. Morrill explained that she does not find counseling beneficial because "if I keep thinking about my problems it's not going to go away." (R. 419.) Dr. Hymoff indicated his familiarity with the record, including the childhood records. He regarded it as "inconsistent" and described Dr. MacDonald as her primary provider for mental health concerns. He noted Dr. Gates's GAF

7

score of 70. (R. 421.) In his view, the record "doesn't talk a lot about her level of anxiety, her fears, all the things she mentions [at hearing]." (R. 422.) On examination by Morrill's hearing representative, Dr. Hymoff testified that he suspects Morrill has some form of anxiety and depression, but that usually significant impairment is matched by "some kind of care" and "some independent documentation about the extent of the impairments." (R. 423.) As for limitations on mental functioning, Dr. Hymoff indicated that a learning disability was likely demonstrated, but that the limiting effects of depression and anxiety ultimately depend on Morrill's subjective report. (Id.)

## Discussion

The finding that Morrill was not disabled was based on application of the grids at step 5 of the sequential evaluation process. Morrill does not argue that application of the grids was erroneous given the Judge's residual functional capacity finding. Instead, Morrill contends that the residual functional capacity finding is erroneous because of a failure to recognize any functional limitation secondary to obesity and a failure on the Judge's part to explain how the residual functional capacity finding came to involve a restriction to simple work.

Preliminary to evaluation of Morrill's ability to engage in substantial gainful activity in work existing in significant numbers in the national economy, the Judge was required to determine Morrill's residual functional capacity (RFC). RFC amounts to "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The measure of a claimant's RFC is a function of "all of [the] medically determinable impairments of which [the Commissioner is] aware," including those found not sufficiently severe for purposes of steps 2 and 3. Id. §§ 404.1545(a)(2), 416.945(a)(2). In general, the claimant is responsible for providing the medical evidence needed to make the RFC finding, though the Commissioner has

8

an obligation to facilitate the development of the record, such as by arranging for consultative examinations, as needed, and referring the medical records for expert review and assessment. Id. §§ 404.1545(a)(3), 416.945(a)(3).

**A.     Mental Impairment**

There is substantial evidence in the record supporting a finding that Morrill does not suffer from a disabling mental impairment or combination of mental impairments. This evidence includes Dr. Hymoff's hearing testimony, Dr. Gates's psychological review, and Dr. Houston's PRT. Dr. MacDonald's far more dire assessment is not supported by a significant treatment history or especially illuminative mental health records and, consequently, it is not entitled to controlling weight. A reasonable person could well agree that the expert opinion and other medical evidence of record justifies a finding that Morrill does not suffer from any greater level of mental impairment than what the Judge assessed in her residual functional capacity finding.

Morrill insists that a technical error has been committed because the Judge found mild limitation in the mental functioning categories but still made a residual functional capacity finding that would depend on the existence of a severe condition. The Judge's findings concerning mental impairment and the related question of residual functional capacity is not erroneous. As the Commissioner indicated at oral argument, the regulations permit a finding that mental limitations are mild at step 2 without foreclosing the possibility of finding more than minimal impairment for purposes of the residual functional capacity assessment. 20 C.F.R. § 416.920a(d)(1) ("If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.").

9

B.  **Physical Impairment**

There is substantial evidence in the record that Morrill does not suffer from a disabling physical impairment or combination of physical impairments. This evidence includes Dr. Axelman's report of physical examination and the physical RFC assessment provided by Dr. Johnson. Dr. MacDonald's contrary assessment is not supported by a treatment history specific to back or knee pain and, consequently, it is not entitled to controlling weight. A reasonable person could well agree that the expert opinion and other medical evidence of record supports a finding that Morrill does not suffer from a severe physical impairment.

Morrill has not argued that the Judge erred in finding no objective medical evidence of a severe back impairment. Instead, Morrill complains that the Judge erred by describing Morrill's obesity as severe without assigning any corresponding limitations at the residual functional capacity stage, or even discussing the question further. The Judge's treatment of the obesity issue can certainly be faulted. However, the Judge's limited consideration of the issue states that the only reason she described obesity as a severe condition was due to the fact that Morrill's body mass index "is classified as obese according to commonly accepted standards as determined by the Centers for Disease Control." (R. 13.) That reasoning, in and of itself, is erroneous. A given body mass index does not require a finding that obesity results in severe impairment. Social Security Ruling 02-01p, 2000 WL 628049, at *4, 2002 SSR Lexis 1, *12 ("There is no specific level of weight or BMI [Body Mass Index] that equates with a 'severe' or a 'not severe' impairment. Neither do descriptive terms for levels of obesity (e.g., 'severe,' 'extreme,' or 'morbid' obesity) establish whether obesity is or is not a 'severe' impairment for disability program purposes.").

Morrill has the burden of proving not merely that obesity is a severe condition, in the

abstract, but that obesity imposes a limitation on her ability to perform work-related activity. Morrill's evidence does not demonstrate that her physical residual functional capacity is limited by a severe physical impairment. Obesity could well impact mechanical back pain or knee pain, but the Judge found that these impairments were not "medically determinable." (R. 13.) Morrill has not challenged that finding in her statement of errors. I am not moved to recommend reversal in the absence of sound argument addressed to that question, particularly where my own review of the record merely reveals complaints of intermittent pain that Morrill had treated with over-the-counter medication, a treating source opinion of an extreme nature that has no grounding in the treatment record, and consulting evaluations finding that the medical records do not demonstrate any physical impairment at all. On this record, I find the alleged obesity-related error harmless.

## Conclusion

For the reasons set forth above, I RECOMMEND that the Court AFFIRM the Commissioner's final decision and enter judgment in favor of the Commissioner.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

July 5, 2011